Eleanor M. COONEY, As Executrix of the Estate of Daniel T. Cooney, Jr., Deceased; Eleanor M. Cooney; Eleanor Schiano; Helen E. Cooney Mueller; Daniel T. Cooney, III; Robert Cooney Individually, Appellants,

v.

Robert E. BOOTH, Jr., M.D.; Arthur R. Bartolozzi, M.D.; David McHugh, D.O. (Fictitious First Name); David G. Nazarian, M.D.; John Doe, M.D., (Fictitious Name); Booth, Bartolozzi, Penn Orthopaedics; Mark Mantell, M.D.; Recovery Room Staff; Jane Doe, John Roe, et al., (Fictitious Names) Graduate Hospital, (Formerly Allegheny Graduate Hospital); Pennsylvania Hospital; Robert E. Booth, Jr., M.D.; Mark Mantell, M.D. Personally; Booth, Bartolozzi, Balderson, Penn Orthopedics Corporation; Dennis McHugh.

No. 01–1929.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 2002.

Opinion Filed Feb. 12, 2002.

**149**

Helen E. Cooney Mueller, (Argued), Cooney & Mueller, Wayne, NJ, for appellants.

Paul E. Peel, (Argued), O'Brien & Ryan, Pointe Plymouth Meeting, PA, for appellees.

Before NYGAARD and STAPLETON, Circuit Judges, and CAPUTO, District Judge.[*]

## MEMORANDUM OPINION
## OF THE COURT

STAPLETON, Circuit Judge.

Appellants' decedent, Daniel T. Cooney, Jr., consented to have Dr. Robert Booth perform knee replacement surgery, but another surgeon, Dr. Arthur Bartolozzi, performed the bulk of the surgery. After the surgery, Cooney's foot became discolored and no pulses were palpable. Bartolozzi and Booth consulted a vascular surgeon, Mark Mantell. Mantell had to perform additional corrective surgery to repair a tear in the popliteal artery. Cooney died as a result of secondary complications from the vascular surgery.

Cooney's estate and individual family members filed suit against Booth, Bartolozzi, Mantell, and a number of other entities. The District Court granted summary judgment to Bartolozzi. Plaintiffs voluntarily dismissed all other defendants except Booth. A jury returned a verdict in favor of Booth.

At trial, plaintiffs pursued three theories of liability: (1) Dr. Booth committed malpractice by performing the knee surgery on Cooney despite the fact that Cooney suffered from peripheral vascular disease, and (2) Dr. Booth committed battery on Cooney by causing him to be operated on without his informed consent in that (a) Booth failed to advise him of the additional risk of knee surgery arising from his pe-

[*] Honorable A. Richard Caputo, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

ripheral vascular disease, and (b) Cooney consented only to an operation by Booth and Booth exceeded the scope of that consent by causing most of the surgery to be performed by Dr. Bartolozzi.

■ Prior to or during trial, plaintiffs' counsel submitted a proposed instruction (Charge "No. 6 INFORMED CONSENT") to the Court pertaining to their two informed consent/battery theories. At the conclusion of the evidence, the Court provided counsel with a tentative set of jury instructions and conducted a charge conference. The conference began with the following advice from the Court and response by plaintiffs' counsel:

THE COURT: ... The motions are now closed. We'll proceed now to the charge conference.

I have provided you with a draft of my proposed jury instructions. The draft embodies all of my rulings on the instructions that you have submitted [to] me, so that if they're not included in the jury instructions, they have been tentatively denied. If they have been included in a modified fashion, those rulings are my tentative rulings, subject to hearing your comments and your objections to that.

So why don't we start with Mr. Klepp for the plaintiff[s].

MR. KLEPP: Judge, my first impression was that perhaps the court did not put in its draft of the charge the increased risk and substantial factor, which is embodied in the model charge 10.03B, but upon review, further review, I see that it is in there.

THE COURT: Okay.

MR. KLEPP: Also, I do not believe that the charge has anything in it with regard to the informed consent regarding battery under the cases that we have previously cited to the Court, particularly plaintiffs' request to Charge No. 6. I

certainly would ask that that be included in the Court's charge with regard to the informed consent/battery.

The Court's tentative instructions were not made a part of the record so we do not know what they said with respect to informed consent. It is clear, however, that the charge ultimately given to the jury addressed both of plaintiffs' informed consent theories at some length, describing them in substantially the same manner as the requested Charge No. 6. Contrary to appellants' insistence, the Court's instructions with respect to those theories do not suggest in any way that the plaintiffs had to prove that Dr. Booth was negligent in any way. On the contrary, the Court instructed that:

A physician who medically treats a patient, without the patient's informed consent, commits a battery on the patient and [ ]is liable for all injuries the patient suffered as a result of that medical treatment, regardless of the care exercised in the performance of the treatment.

While the Court did instruct on the concept of negligence, it did so solely in the context of plaintiffs' malpractice claim.

Immediately after the jury charge, the Court called a sidebar conference and expressly inquired of counsel whether they had any objections to the charge as given. Plaintiffs' counsel replied, "No, sir."

■ The Verdict Sheet contained the following two questions, among others, that the jury answered with a "No:"

1. Do you find that the defendant Robert E. Booth, Jr., M.D. was negligent?

* * *

3. Do you find that the defendant Robert E. Booth, Jr., M.D. violated the doctrine of informed consent?

We have carefully compared plaintiffs' requested charge No. 6 with the portions of the actual charge directed to the same subject matter and we find no material difference. Moreover, to the extent there are any differences at all, given the District Court's comprehensive treatment of the informed consent/battery theories in its charge, the alleged errors now pointed to by appellants clearly were not preserved by counsel's general objection at the charge conference.

We are mindful of the fact that it is not necessary to object to an erroneous portion of a charge after it is given where the court previously has unambiguously and finally rejected an objection "stating distinctly the matter objected to and the grounds of the objection." F.R.Civ.P. 51. See *Smith v. Borough of Wilkinsburg,* 147 F.3d 272 (3d Cir.1998). The purpose of Rule 51, however, is to ensure "that the district court is made aware of and given an opportunity to correct any alleged error in the charge before the jury begins its deliberations." *Id.* at 276. Here the District Court had not finally rejected Charge No. 6 at the time of the charge conference and, absent a specific objection following the actual charge, it had no way of knowing that its efforts to accommodate the general objection made at the conference had not been wholly successful.

The charge as given contains no plain error. The judgment of the District Court will be affirmed.