Eleanor M. COONEY, as Executrix of the Estate of Daniel T. Cooney, Jr., Deceased, et al., Plaintiffs,

v.

Robert E. BOOTH, Jr., MD., et al., Defendants.

No. CIV.A.00–1124.

United States District Court, E.D. Pennsylvania.

May 9, 2003.

496

Frederick W. Klepp, Cherry Hill, NJ, Helen E. Cooney Mueller, Wayne, NJ, for plaintiffs.

John F. O'Brien, III, Paul E. Peel, O'Brien & Ryan, Plymouth Meeting, PA, for Arthur R. Bartolozzi, M.D., David G. Nazarian, M.D., defendants.

Michele Daniele, Harvey, Pennington, Herting and Renneisen, Ltd., Philadelphia, PA, Georgia Kalavruzos, Harvey Pennington Cabot, Griffith & Renneisen Ltd, Philadelphia, PA, for Mark Mantell, defendant.

Lawrence E. Currier, Goldfein & Hosmer, Philadelphia, PA, for Daniel McHugh, movant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

Presently before the court is an affidavit/certification filed by Helen E. Cooney Mueller, Esq. ("Movant"), as pro se plaintiff, on her own behalf and as counsel[1] for the other plaintiffs in this action, setting forth allegations of personal bias and prejudice and/or demonstrative of an appearance of impropriety on the part of the presiding judge in the case.

Movant is a disappointed litigant in a medical malpractice action brought by the estate of her father, the late Daniel T. Cooney, Jr. ("Mr.Cooney"), her mother, herself and her adult siblings (who together with Movant are referred to as "plaintiffs") against five physicians at Pennsylvania Hospital in Philadelphia, Pennsylvania who performed a knee replacement surgery on Mr. Cooney. A number of medical complications set in after surgery and Mr. Cooney died a few weeks later without returning home.

On March 13, 2001, the case proceeded to trial against Robert E. Booth, Jr., M.D. ("Booth") only. The remaining defendants were either dismissed by plaintiffs or by the court on motion by the defendants prior to trial. Following a six day trial, the jury returned a verdict for defendant Booth. Thereafter, the court entered judgment for the defendants and plaintiffs appealed. On February 12, 2002, the Third Circuit affirmed.

On June 12, 2002, plaintiffs filed a motion to set aside the judgment and/or for a new trial ("motion to reopen the judgment") claiming that defendants committed perjury during the litigation and at trial and that they otherwise caused a fraud on the court to occur. On January 30, 2003, the court denied the motion to reopen the judgment.

On February 7, 2003, Movant, on her own behalf and on behalf of plaintiffs, filed a motion for reconsideration of the court's order denying the motion to reopen the judgment and an affidavit/certification executed by Movant requesting recusal of the presiding judge. The gist of this charge of

---

1. Movant is a member of the New Jersey Bar.

bias appears to grow from Movant's impression, presumably based on an unidentified newspaper report, that the presiding judge was recommended for appointment to the Third Circuit by Senator Arlen Specter and thereafter nominated to the Third Circuit by President Bush. This misunderstanding fuels the Movant's apparent suspicion that there is a connection between the alleged recommendation by Senator Specter and subsequent alleged nomination by President Bush of the presiding judge to the Third Circuit and certain adverse rulings made by the presiding judge for the benefit of the defendants, one of whom the Movant claims "was extremely good friends" with Senator Specter's son, Shanin Specter, or, at least, that the alleged recommendation and nomination created an appearance of impropriety. Specifically, the affidavit/certification makes the following allegations: [2]

Paragraph 4: "[P]laintiffs were forced by [the presiding judge] to retain another attorney [other than Movant]."

Paragraph 6:

[I]mmediately prior to trial[,] defendants made a[m]otion in [l]imine to exclude any evidence that defendants were being investigated for Medicare Fraud. Through rumor, plaintiffs had heard that defendants were being investigated for Medicare Fraud and, therefore, stated same at their depositions. Unfortunately, there was no evidence to confirm same and thus the motion was ultimately granted.

Paragraph 7: "[W]ithout explanation," the presiding judge dismissed Defendant Arthur R. Bartolozzi, M.D. ("Bartolozzi"). "[T]he facts [of the case] in no way warranted a dismissal of Bartolozzi."

Paragraph 8: The presiding judge:

never reviewed the court's battery jury instructions with the parties' attorneys .... Contrary to the law, [the presiding judge] instructed the jury that in order to find defendant, Booth, liable for battery, the jury must find negligence by defendant Booth. Following jury instructions, [the presiding judge] left the courthouse and another judge filled in for the jury verdict. Plaintiffs[ ] appealed to the Third Circuit based on the erroneous battery instructions.

Paragraph 9:

In December, 2001, it was reported in local newspapers that United States Senator, Arlen Specter, was recommending that [the presiding judge] be appointed to the Third Circuit. This recommendation was shockingly "outside" Pennsylvania committee recommendation procedures and the recommendation was to replace a New Jersey Third Circuit Judge. This was extremely disturbing to plaintiffs given the fact that Shanin Specter, son of Arlen Specter was "extremely good friends" with defendant, Bartolozzi, and given the facts that [the presiding judge] had dismissed defendant, Bartlozzi, without explanation, without any basis in the facts, and despite documentation of Bartolozzi's involvement in the matter, only a couple of days prior to trial. Further, plaintiffs discovered that Shanin Specter's partner, Thomas Kline, was on several federal judiciary appointment committees.

Paragraph 10:

On January 23, 2002, the Third Circuit heard oral argument [on plaintiffs' appeal of the trial court's battery instruction]. Following oral argument, the Third Circuit judges unusually requested that the parties' attorneys remain [in]

---

**2.** Movant's affidavit/certification also contains allegations not related to the issue of bias. These allegations are related to the issue of

reconsideration and are, therefore, not presently before the court.

the courtroom while they took a short break in chambers. On return, they dismissed the attorneys. Interestingly, later that day, President Bush handed down his nominations for Federal Circuit Court of Appeals judges.

Paragraph 11: "Despite a strong legal basis for plaintiffs' appeal, the Third Circuit decided to affirm the trial judgment."

Paragraph 15: In response to plaintiffs' motion to reopen the judgment, the presiding judge:

ordered a[h]earing in the matter .... Plaintiffs served defendants with subpoenas for appearance at said [h]earing. Immediately prior to the [h]earing, defendants brought a[m]otion to quash the subpoenas stating "inconvenience" to the defendants. [The presiding judge] then incredibly, in total contradiction to his August 13, 2002 Hearing Order, requests that the attorneys submit Memorand[a] of Law, and held oral argument on the Motion on September 24, 2002.

Paragraph 16: During oral argument, Movant:

referred to her difficulty in obtaining an attorney in the matter who did not have a conflict of interest. She erroneously refers to Steven Specter, the other son of Arlen Specter, rather than Shanin Specter who she had actually contacted. [The presiding judge] incredibly corrects [the Movant] and specifically states: "Shanin Specter."

Paragraph 17: Following argument on the Movant's motion to reopen the judgment, but before the court had actually ruled on the motion, an individual informed the Movant that she had spoken with John F. O'Brien, II ("O'Brien"), counsel for the defendants and that during this conversation:

O'Brien stated to her that "[the presiding judge] has blown off the matter."

At this juncture, the [c]ourt had not ruled on plaintiffs' [motion to reopen the judgment] .... After waiting approximately nine(9) months for a ruling in this matter, [the presiding judge] issued an [o]rder that did in fact "blow off" plaintiffs['] [motion to reopen the judgment] and offers erroneous statements in support of same (i[.]e[.,] says there was a[h]earing when in fact there was no [h]earing in the matter). [ ][T]his implies that there may have been ex parte communication between [the presiding judge and O'Brien].

Paragraph 18: The presiding judge erroneously denied the motion to reopen the judgment.

Claims that a federal district judge should recuse in an ongoing litigation are generally examined under 28 U.S.C. § 144 and 28 U.S.C. § 455. As discussed below, the statutes, while related and designed to serve the common purpose of insuring the integrity of the judicial process, contain quite different procedural requirements and have distinct pedigrees. Although the Movant claims only that the facts asserted in the affidavit/certification establish "more than the appearance of impropriety" on the part of the presiding judge, and that the presiding judge "was not only impartial but in fact may have made determinations that were not guided by justice," Movant does not specify which of the two statutes, or both, she is preceding under. Nor has Movant submitted a legal memorandum pointing to the legal basis for the recusal request. Nevertheless, for the sake of completeness and in the interest of justice, given the adverse impact that unaddressed allegations of bias and partiality on the part of a presiding judicial officer have on the public's confidence in the judicial system, the court will address the Movant's claims against the presiding judge under both statutes.[3]

---

**3.** The court notes that the Movant is in violation of various local rules. To the extent the

For the reasons that follow, the court finds that, under 28 U.S.C. § 144, accepting as true the allegations set forth in the affidavit/certification, the facts asserted are legally insufficient to warrant a reasonable person to conclude that the presiding judge harbors a personal bias either in favor of or against any party to this action and that the affidavit/certification is untimely. Moreover, under 28 U.S.C. § 455, Movant has failed to show that a reasonable person, knowing all the circumstances, would have doubts as to the presiding judge's impartiality in this case.

## II. DISCUSSION

### A. *Recusal under 28 U.S.C. § 144.*

■ Title 28 of the United States Code, Section 144 ("Section 144") provides in pertinent part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. Recusal is not automatic. Under the statute the court must first determine (1) whether the affidavit is legally sufficient and (2) whether it was timely filed.

### 1. *Legal sufficiency of the affidavit.*

■ When a party files a motion for disqualification and supporting affidavit under Section 144, all factual allegations contained in the affidavit must be accepted as true.[4] *United States v. Furst,* 886 F.2d 558, 582 (3d Cir.1989). This is so even if the presiding judge knows the allegations to be false and even where the allegations are contrary to the facts contained in the record or which may be proven to be false by other means, including judicial notice. *See, e.g., United States v. Rankin,* 870 F.2d 109, 110 (3d Cir.1989) (noting that despite the judge's personal knowledge that he never "chased [the defendant] around parts of the courtroom," nor "poked, shoved, [or] struck him," Section 144 bound the judge to accept allegations that he had done so as true). Recusal,

request for recusal is made by motion based on 28 U.S.C. § 455, the request must be supported by a memorandum of law. *See* Local R. Civ. P. 7.1. Moreover, no reply may be filed without leave of court, which was not granted in this case. *See* Local R. Civ. P. 7.1(c). Additionally, while the Movant may proceed pro se on her own behalf, to the extent that she is acting as counsel for her coplaintiffs, given that Movant is not a member of the Pennsylvania Bar or the bar of this court, she is required to retain associate counsel of record. *See* Local R. Civ. P. 83.5.2. Although these violations of our local rules would ordinarily be sufficient to deny the request, *see United States v. Eleven Vehicles, Their Equipment and Accessories,* 200 F.3d 203, 216 (3d Cir.2000), in this case, given the allegations of impropriety, the court will address the issues on the merits.

**4.** The Movant filed a second affidavit generally reasserting the allegations set forth in the first. The court notes that in a given case, Section 144 explicitly limits a party to filing only one affidavit in support of recusal. 28 U.S.C. § 144 ("[a] party may file only one such affidavit in any case"); *see also United States v. Merkt,* 794 F.2d 950, 961 (5th Cir. 1986) ("[Movant's] affidavit violates the one affidavit rule ... and need not be considered"); *United States v. Balistrieri,* 779 F.2d 1191, 1200 (7th Cir.1985) ("Because of the statutory limitation that a party may file only one affidavit in a case, we need consider only the affidavit filed with [movant's] first motion"). Therefore, the court will not formally consider the facts set forth in the second affidavit. Even if it did consider it, given that the affidavit merely reiterates the assertions made in the first affidavit, for the reasons set forth in this memorandum, the same result would ensue.

however, must be based on facts contained in the affidavit and not on the movant's conjecture, speculation, "[Conclusory statements [or] opinions.]" *United States v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989).

■ As a threshold matter, the presiding judge must determine whether the facts alleged are legally sufficient to support a charge of bias or prejudice. *See Mims v. Shapp,* 541 F.2d 415, 417 (3d Cir.1976). Accepting the facts alleged as true, but not the conclusions, conjecture speculation or surmises, the court must answer whether "a reasonable person would conclude that a personal bias[,] as distinguished from a judicial bias[,] exists." *Mims,* 541 F.2d at 417. The issue is ultimately whether the facts stated in the affidavit "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States,* 255 U.S. 22, 33–34, 41 S.Ct. 230, 65 L.Ed. 481 (1921) (interpreting the predecessor to section 144).

The Movant's allegations fall generally within three categories: (1) incorrect judicial rulings; (2) the connection between these rulings and Senator Specter's recommendation of the presiding judge for appointment to the Third Circuit; and (3) the connection between the statement by defense counsel that the presiding judge had "blown off" the matter and the court's subsequent denial of plaintiffs' motion to reopen the judgment. Thus, the court must determine, in the first instance, under the general principles discussed above, whether these allegations, as set forth in the affidavit/certification, are legally sufficient to warrant recusal.

a. *Incorrect judicial rulings.*

■ Movant quarrels with the following rulings: (1) the decision of the presiding judge to "force" plaintiffs to retain another attorney (Paragraph 4 of the affidavit/certification); (2) the granting of defendants'

motion in limine to "exclude [from trial] any evidence that defendants were being investigated for [m]edicare [f]raud" (Paragraph 6); (3) the presiding judge's dismissal of Bartolozzi "without explanation," given that "the facts [of the case] in no way warranted a dismissal of Bartolozzi" (Paragraph 7); (4) the battery instruction given to the jury, which was "[c]ontrary to the law" and given to the jury without first affording counsel for the parties an opportunity to review it (Paragraph 8); and (5) the presiding judge's denial of plaintiffs' motion to reopen the judgment without holding an evidentiary hearing after having ordered that an evidentiary hearing be held (Paragraphs 15 & 18).

■ As stated by the United States Supreme Court in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. The Court explained:

In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), [judicial rulings] cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required [ ] when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not recusal.

*Id.*

In other words, "disagreement with a judge's determinations and rulings cannot be equated with the showing required to so reflect on impartiality as to require recusal." *In re TMI,* 193 F.3d 613, 728 (3d Cir.1999). It is clear, therefore, that Movant's claims of bias and prejudice are legally insufficient to the extent that they are based on judicial rulings with which she disagrees. Nor does the Movant point to facts which describe inappropriate com-

ments from the bench or rude conduct by the court, or otherwise convert this case into the "rare case" in which the court displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky*, 510 U.S. at 555, 114 S.Ct. 1147.

b. *Movant's speculation as to the extrajudicial source which allegedly evidences the presiding judge's personal bias in favor of defendants.*

 The Movant also alleges that the court's rulings were based on and motivated by an improper extrajudicial source. Under Section 144, recusal must be based on facts contained within a Section 144 affidavit, and not on the applicant's speculation. *See Vespe*, 868 F.2d at 1340. Opinions and subjective conclusions, whether well intentioned or not, based on suspicion, innuendo, speculation or conjecture are legally insufficient to warrant recusal under Section 144. *See id.* Accordingly, the court may disregard personal opinions and conclusions when determining whether the allegations within the affidavit are sufficient to establish the existence of personal bias on the part of the presiding judge. *See id.* (disregarding a criminal defendant's speculation when applying the reasonable person test); *see also United States v. Miranne*, 688 F.2d 980, 985 (5th Cir.1982) (affirming trial judge's determination that a speculation of bias was insufficient to warrant recusal); *United States v. Morrison*, 153 F.3d 34, 48 (2d Cir.1998) ("[W]here an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which brings into question a judge's impartiality") (alteration in original); *Bumpus v. Uniroyal Tire Co.*, 385 F.Supp. 711, 715 (E.D.Pa.1974) ("Subjective conclusions or opinions that bias or the appearance of impropriety may exist are insufficient to require a [j]udge's disqualification").

Stripped of conjecture, opinion and speculation, the facts alleged by Movant which must be accepted as true are: that Shanin Specter is an "extremely good friend" of Bartolozzi, a defendant in this case (Paragraph 9); that "without explanation," Bartolozzi was dismissed from the case (Paragraph 7) and the presiding judge made certain other adverse ruling (Paragraphs 6, 8 & 18); that (six months thereafter) Senator Arlen Specter recommended that the presiding judge be appointed to a seat on the Third Circuit (Paragraph 9); that the Third Circuit met after oral argument and after conferring *in camera*, dismissed the lawyers from the courtroom (Paragraph 10); and that on the same day oral argument was heard by the Third Circuit, President Bush announced the list of circuit court nominees (Paragraph 10).

Movant's personal opinion or suspicion as to why Bartolozzi was dismissed from the case or what motivated the court to rule the way it did is based on conjecture and speculation and, therefore, need not be accepted as true and may not be considered in the calculus of legal sufficiency as applied to these allegations. Nor need the court accept the Movant's conjecture as to why the Third Circuit judges met *in camera* after hearing argument and thereafter dismissed the lawyers from the courtroom and whether such after argument conferences are "unusual," or why President Bush announced his choice of circuit court nominees on the same day.

Under these circumstances, the facts alleged by Movant, accepted as true and stripped of the opinions, conjectures, surmises and speculation crafted into them by the Movant as to why the presiding judge ruled as he did do not give "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment [on the part of the presiding judge]." *Berger*, 255 U.S. at 33–34, 41 S.Ct. 230.

Thus, the facts alleged by Movant, even if true, are legally insufficient to enable a reasonable person to conclude that the presiding judge has a personal bias against the plaintiffs in this case.

c. *The Movant's remaining allegations are legally insufficient to warrant recusal.*

■ First, the Movant alleges, in Paragraph 17, that an individual had informed her that defense counsel O'Brien had stated that the presiding judge "has blown off the matter," and that, later, the presiding judge did, in fact, "blow off" the matter by denying plaintiffs' motion to reopen the judgment. Based on these facts, the Movant states that "this implies that there may have been ex parte communication" between the presiding judge and O'Brien.

■ The court must accept as true the contention that O'Brien made this statement. Not to be accepted as true is the opinion, based on speculation and surmise, that "there may have been ex parte communication" between the presiding judge an O'Brien. Accepting as true that O'Brien made the statement, the naked statement is no more than a lawyer's short hand way of saying of how he felt the presiding judge was treating, or was likely to treat, Movant's arguments. A lawyer's opinion as to how a judge has ruled or is likely to rule does not constitute evidence of the judge's partiality. *See In re Martinez–Catala,* 129 F.3d 213, 219 (1st Cir. 1997) ("There [was] nothing in the [defense counsel's alleged] statement to indicate that [he] was doing more than making an intelligent prediction," or that would "prove that the *judge* revealed to defense counsel how the judge intended to rule on the pending motions") (emphasis in original); *Glassroth v. Moore,* 229 F.Supp.2d 1283, 1288–89 (M.D.Ala.2002) ("The court finds that this letter would not cause a reasonable person to doubt *my* impartiality, as I did not write it, and it contains no reference to any actions on my part that formed the basis of the statement by plaintiff's counsel") (emphasis in original).[5]

For all of the above reasons, the court finds that under applicable law, the facts alleged by the Movant could not lead a reasonable person to conclude that a personal bias, either against the Movant or in favor of the defendants, exists on the part of the presiding judge. Therefore, the motion for recusal will be denied to the extent it is based on actual bias under Section 144.

2. *Timeliness*

■ Movant's request for recusal is also subject to the requirement that it be "timely." *See* 28 U.S.C. § 144. "It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple v. Jewish Hosp. and Medical Ctr.,* 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of "reasonable diligence." *See Furst,* 886 F.2d at 581 n. 30. The reason for this requirement is obvious—a party with knowledge of

---

5. In Paragraph 8, the Movant alleges that the presiding judge left the courthouse after the jury was instructed, and that a substitute judge sat in for the verdict. However, the Movant fails to set forth any connection between the judge's alleged conduct and the existence of a personal bias in favor of the defendants. It is unclear from her affidavit/certification whether these allegations are intended to support a finding of bias on the part of the presiding judge, or whether they are included in the affidavit/certification as mere background. Regardless, the court finds that no reasonable person could conclude that the facts asserted in this paragraph support a finding of partiality on the part of the presiding judge.

facts that may implicate the need for the presiding judge to recuse himself may not sit idly by and gamble upon the outcome of a proceeding, secured in the knowledge that, if the wrong result ensues, it can always cry foul.

In this case, Movant does not specify when she came into knowledge of the facts upon which her claim is predicated. The affidavit, however, states that "[i]n December, 2001, it was reported in local newspapers that United States Senator, Arlen Specter, was recommending that [the presiding judge] be appointed to the Third Circuit." (Paragraph 9). Since it was apparently this event that caused Movant to conclude that there was an alleged connection between the reported recommendation and the court's rulings at trial, Movant was under an obligation to bring the matter to the court's attention at that time. Instead, the Movant remained silent and proceeded with an appeal to the Third Circuit and filed a motion to reopen the judgment of this court before the very judge who she now claims harbored a personal bias in favor of the defendants. It was only after the Third Circuit denied the appeal and the court denied the motion to reopen its previously entered judgment that the Movant brought the request for disqualification/recusal before the court. On these facts, the court concludes that the Movant did not exercise reasonable diligence and that, therefore, the request is not timely.

### B. *Recusal under 28 U.S.C. § 455.*

■■■■■ Section 455(a)[6] provides that "[a]ny justice judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) deals with recusal, or disqualification, on the basis of the appearance of impropriety, as opposed to actual bias. *See Furst*, 886 F.2d at 580. Under Section 455(a), recusal is required when a reasonable person, knowing all of the circumstances, would harbor doubts as to the judge's impartiality. *In re Prudential Ins. Co. of America*, 148 F.3d 283, 343 (3d Cir.1998); *United States v. Antar*, 53 F.3d 568, 574 (3d Cir.1995); *Vespe*, 868 F.2d at 1341. The weight of authority holds that, unlike a Section 144 determination, when deciding a motion for recusal under Section 455(a), the court need not accept the Movant's allegations as true. *See, e.g., Martinez–Catala*, 129 F.3d at 220; *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) ("Section 455 does not require the judge to accept allegations by the moving party as true"); *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1019–20 n. 6 (5th Cir.1981); *see also* 13A Charles A Wright, Arthur R Miller & Edward H. Cooper, Federal Practice and Procedure § 3550 (2d ed. 1984) ("If a party does move [for recusal] under § 455, and the motion is supported by an affidavit . . ., the court is not required to accept the factual statements as true"). Instead, the presiding judge may contradict the Movant's factual allegations with facts derived from the judge's knowledge and the record.[7] *See Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 872 F.Supp.

---

**6.** Section 455(b)(1) deals with personal bias in virtually the same context as Section 144. 28 U.S.C. § 455(b)(1). Therefore, the court's analysis of recusal under Section 144 is equally applicable to recusal under Section 455 (except that under Section 455, the Movant's factual allegations need not be accepted as true). The rest of section 455 is inapplicable to the case at bar. *See* 28 U.S.C. § 455.

**7.** Assuming *arguendo* that, under Section 455, the court is required to accept the Movant's factual allegations as true, the court finds that for the same reasons discussed in the above analysis of recusal under Section 144, i.e., because the request for recusal is based primarily upon tenuous speculation and judicial rulings, that no reasonable person would question the judge's impartiality.

1346, 1349 (E.D.Pa.1994); *see also Martinez–Catala*, 129 F.3d at 220 ("To the extent that facts are in dispute, factual determinations are made by the judge whose recusal is in question"). Accordingly, after reviewing the Movant's affidavit in light of the record and surrounding facts and circumstances, the court finds that numerous allegations contained therein are inaccurate, unsupported and/or based on highly tenuous speculation.

First, the Movant alleges that the presiding judge "forced" her to retain another attorney to represent the plaintiffs. A review of (1) the transcript of the April 13, 2000 initial pretrial conference and hearing on defendants' motions to dismiss, (2) the transcript of the September 24, 2002 hearing [8] on the motion to set aside judgment and (3) the docket reveals that the Movant was not forced to obtain substitute counsel, but rather, chose to do so on her own, after the court questioned her qualifications to represent the estate and defense counsel indicated that she may have been called as a witness at trial.

At the inception of the April 13, 2000 initial pretrial conference and hearing on defendants' motions to dismiss, the court noted its concern regarding whether plaintiffs' counsel, the Movant, could appropriately represent herself, the estate of the deceased and members of her family.[9] (Apr. 13, 2000 trans. at 3). The court's concern grew stronger when defense counsel indicated that plaintiffs' counsel could be called as a witness at trial. (Apr. 13, 2000 trans. at 9–11). Based on these concerns, the court permitted counsel for the defendants to file motions to disqualify the

Movant as plaintiffs' counsel and scheduled a hearing on this issue. (Apr. 13, 2000 trans. at 19). Counsel for the defendants filed motions to disqualify. (doc. nos. 21, 23 & 25). Before the scheduled hearing, however, the Movant voluntarily withdrew and Frederick W. Klepp, Esq. entered his appearance as plaintiffs' counsel. (doc. no. 24). Additionally, at the September 24, 2002 hearing on plaintiffs' motion to set aside judgment, the Movant conceded that the "reasons [for the court's concerns regarding her representation of the plaintiffs] were very legitimate." (Sept. 24, 2002 trans. at 32–33). Therefore, the court finds that no reasonable person knowing all the facts could conclude that Movant was forced off the case or that the plaintiffs were "forced" to retain substitute counsel.

Second, the Movant alleges that contrary to the law and evidence in the case, and without explanation, the presiding judge granted summary judgment in favor of Bartolozzi and dismissed him from the case. This is also incorrect. A review of the transcript of the March 6, 2001 hearing at which the presiding judge ruled on Bartolozzi's motion for summary judgment makes clear the court's reason for granting summary judgment in favor of Bartolozzi.

As stated by plaintiffs' counsel at the hearing, the plaintiffs voluntarily withdrew all claims against Bartolozzi except that of medical negligence. Under Pennsylvania law, in order to state a claim for medical negligence, a "plaintiff must offer an expert who will testify 'to a reasonable

---

8. In her motion for recusal, the Movant makes much ado about the court's use of the term hearing. For the purpose of this memorandum, the term hearing refers to both evidentiary hearings and oral arguments. Where relevant and appropriate, the court will specify the type of hearing to which it refers.

9. *See Eagan v. Jackson*, 855 F.Supp. 765, 780–82 (E.D.Pa.1994) (discussing the court's duty to inquire into possible conflicts where a family member/lawyer represented the estate of an incompetent in circumstances where the lawyer had agreed to an enhancement of his fee to the detriment of the estate).

degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'" *Eaddy v. Hamaty*, 694 A.2d 639, 642 (Pa.Super.1997) (quoting *Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888, 892 (1990)). If the plaintiff fails to do so, summary judgment should be granted in defendant's favor. *Eaddy*, 694 A.2d at 641–43. Prior to trial, defendant Bartolozzi moved for summary judgment alleging that nowhere in the medical expert report submitted to the court by plaintiffs did it state that the conduct of Bartolozzi deviated from good and acceptable medical standards.

At the hearing, the court repeatedly requested that plaintiffs' counsel identify where in the plaintiffs' medical expert report it stated that Bartolozzi's conduct fell below the appropriate standard of care. The court specifically asked "[w]here does it say in the expert report that ... [Dr. Bartolozzi] breached the standard of care," to which plaintiff's counsel replied, "[i]t does not." (Mar. 6, 2001 trans. at 18). Plaintiffs' counsel went on to explain to the court plaintiffs' theory regarding the applicable standard of care owed to the decedent by Bartolozzi and Bartolozzi's alleged failure to comply with that standard. Again, the presiding judge asked where, in the expert report, it indicated that *Bartolozzi's* conduct fell below the appropriate standard. Plaintiffs' counsel admitted that he could point to nothing in the report that so indicated. (Mar.6, 2001 trans. at 19–20). Once this concession was made, summary judgment in favor of Bartolozzi was compelled. Based on this exchange be-

tween the presiding judge and plaintiffs' counsel, the court finds that a reasonable person would recognize that the presiding judge based his decision to grant Bartolozzi's summary judgment motion on the plaintiffs' failure to present expert testimony that stated to a reasonable degree of medical certainty, that the acts of Bartolozzi deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.

Additionally, the court notes that, with the exception of the court's denial of the plaintiffs' request that the jury be given the informed consent/battery instruction proposed by plaintiffs, none of the court's other rulings were appealed to the Third Circuit. In fact, the Third Circuit affirmed the trial court's ruling regarding the informed consent/battery instruction given to the jury. Although Movant is correct in her assertion that the court's other rulings could not have been appealed at the time they were made because such an appeal before a final judgment was entered would have constituted an interlocutory appeal, once the jury returned its verdict and judgment was entered in favor of the defendants, all rulings made during the litigation could have been appealed to the Third Circuit.[10]

Third, the Movant alleges that soon after Bartolozzi's dismissal from the case, Senator Arlen Specter recommended that the presiding judge be appointed to the Third Circuit. The court takes judicial notice that Senator Specter has stated that he did not recommend that the presiding judge be appointed to the vacant seat in the Third Circuit.[11] Thus, the court finds

---

10. The court further notes that Movant's theory that the alleged connection between Bartolozzi and Shanin Specter motivated the court's rulings fails to explain the motivation behind the court's other allegedly biased rulings that were made after Bartolozzi was dis-

missed or were otherwise unrelated to Bartolozzi.

11. In a letter to the editor of the *Legal Intelligencer* from Senator Specter, Senator Specter wrote, "I have done nothing to promote Judge Robreno or anyone else for the open

that no reasonable person knowing all the circumstances would question the presiding judge's impartiality based on the above allegations.

■ Fourth, the Movant alleges that the presiding judge never reviewed the court's lack of informed consent/battery instruction with counsel for the parties and that the instruction ultimately presented to the court was contrary to Pennsylvania law. One, the transcript of the charge conference clearly shows that the judge presented counsel with tentative jury instructions and gave them the opportunity to make objections thereto. (Mar. 20, 2001 trans. at 124–36). Plaintiffs' counsel raised his concerns regarding the lack of informed consent/battery instruction and requested that the court instruct the jury on informed consent as set forth in plaintiffs' proposed jury instructions. (Mar. 20, 2001 trans. at 124). However, after discussing his concerns with the court, plaintiffs' counsel indicated that he was, in fact, satisfied with the court's proposed instructions.[12] (Mar. 20, 2001 trans. at 126). Two, immediately after the jury was charged, the court called a sidebar conference and expressly inquired of counsel whether they had any objection to the charge as given. (Mar. 21, 2001 trans. at 29). Plaintiff's counsel replied, "No, sir." (Mar. 21, 2001 trans. at 29). Additionally, plaintiffs appealed the judgment of the trial court to the Third Circuit Court of Appeals. See 28 Fed. Appx. 148 (3d Cir. 2002). On appeal, the plaintiff challenged the lack of informed consent/battery instruction given to the jury. See id. The Third Circuit found that there was no material difference between the plaintiffs' proposed jury instructions and those ultimately given to the jury, that plaintiffs'

counsel failed to preserve an objection to the jury instructions and that the jury instructions given contained no plain error. Id. at 150–51.

■ Fifth, based on a somewhat bizarre theory, the Movant suggests that the Third Circuit's affirmance of the trial court's ruling on the jury charge (the only issue appealed to the Third Circuit) is somehow also connected to the presiding judge's possible appointment to the Third Circuit. In support of this allegation the Movant claims that the Third Circuit judges "unusually" returned to chambers after oral argument in this case and dismissed counsel for the parties from the courtroom when they returned. Movant couples this claim with the announcement that, on that same day, President Bush released his nominations to the courts of appeals. The gist of this paragraph is, presumably, to link the Third Circuit's ruling to President Bush's release of his nominees to the court of appeals.

Movant's allegations are simply in error. Under Third Circuit internal operating procedures, there is nothing "unusual" about the members of the panel meeting after hearing oral argument. See I.O.P. 4.1. Nor did President Bush include the name of the presiding judge on his list of nominees to the circuit court. The court, therefore, finds that no reasonable person, knowing all the circumstances, could harbor doubts as to the impartiality of the presiding judge based on any of the Movant's allegations related to the Third Circuit's affirmance of the presiding judge's charge to the jury.

■ Finally, the record shows that during oral argument on the plaintiffs' mo-

---

New Jersey seat on the [Third] Circuit." Arlen Specter, *Specter Disputes Report of His Support,* THE LEGAL INTELLIGENCER, Nov.. 21, 2001, at 2.

**12.** In fact all disputes regarding the jury charge were either resolved by agreement of the parties or decided in favor of plaintiffs. (Mar. 20, 2001 trans. at 124–36).

tion to set aside judgment, the Movant attempted to portray to the court the difficulty she encountered in finding a Pennsylvania attorney to represent plaintiffs. The Movant stated that she had attempted to retain Senator Specter's son, "Steven Specter," but that he refused to take plaintiff's case because he was close and personal friends with Bartolozzi. The record also shows that the presiding judge voluntarily corrected the Movant when he said, "Shanin Specter." The presiding judge made this statement based on his knowledge that only one of the senator's sons, i.e., Shanin Specter, is a member of the bar. No reasonable person, knowing all of the facts, could conclude that, because the presiding judge knew that the son of Arlen Specter who is a member of the bar is Shanin and not Steven, the presiding judge harbored bias or prejudice towards the plaintiffs in this case.

For the reasons stated above, the court finds that under the facts of this case, a reasonable person, knowing all the facts and circumstances, would not harbor doubts as to the presiding judge's impartiality. Therefore, the motion for recusal will also be denied to the extent it is based on an appearance of impartiality or impropriety under Section 455(a).

### C. *A Judge's Duty where Recusal is Inappropriate.*

One additional point needs to be made in the interest of wise judicial administration. Both Sections 144 and 455 describe a process designed to ensure not only the fact, but also the appearance of impartiality in our courts. Section 144, in particular, is quite powerful, requiring recusal on the basis of bare allegations and unadjudicated facts. When used in good faith, these provisions serve to strengthen the public's confidence in the administration of justice. When misused, or used for an improper purpose, they can cause great harm. While the threat of perjury prosecution, the prospect of Rule 11 sanctions or even referral to the State's Disciplinary Board are powerful antidotes to misconduct by counsel (not so for non-lawyers), in the final analysis, it is the willingness of the judge, so accused, to make time in the judicial calendar to work through the allegations, dispassionately about the facts and fairly as to the law, that best protects the system of justice from the corrosive effects of judge shopping by litigants. Although, at times, it may seem appealing or even wise to yield to another court, on the premise that the allegations of impartiality are a distraction to the main event, to do so, while a short term expedient, will reward the culprit, punish the other parties to the litigation and encourage the tactic of judge shopping. It is, thus, "vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). For these additional reasons, recusal is not appropriate in this case.

### III. CONCLUSION

For the foregoing reasons, the court concludes that (1) the facts alleged by the Movant could not lead a reasonable person to conclude that a personal bias, either against the Movant or in favor of the defendants, exists on the part of the presiding judge, (2) the affidavit/certification in support of recusal was not timely filed and (3) under the facts of this case, a reasonable person, knowing all the facts and circumstances, would not harbor doubts as to the presiding judge's impartiality. Therefore, the request for recusal under 28 U.S.C. § 144 and the motion to disqualify under 28 U.S.C. § 455 will be denied.

### *ORDER*

**AND NOW,** this 9th day of **May, 2003,** upon consideration of plaintiffs' motion for

recusal and attached affidavit/certification (doc. no 123–1), as well as all responses and replies thereto, it is hereby **ORDERED** that the request for recusal under 28 U.S.C. § 144 is **DENIED**.

It is **FURTHER ORDERED** that the motion for recusal under 28 U.S.C. § 455 (doc. no. 123–1) is **DENIED**.

AND IT IS SO ORDERED.